# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| TRACEY VICKERS, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 19-cv-398-NJR |
| GERTCH,<br>DIETARY SUPERVISOR DENSMORE,<br>DIETARY SUPERVISOR KOHN,<br>DIETARY SUPERVISOR SANDERS,<br>C/O RUE,<br>R.N. WARD,<br>LT. McCARTHY,<br>C/O SLOAN,<br>C/O HAWES,<br>DR. AHMED,<br>DR. SHAH,<br>R.N. WELTY, and<br>N.P. STOVER, | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Tracey Vickers, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Lawrence Correctional Center ("Lawrence"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Plaintiff alleges Defendants were deliberately indifferent in the treatment of his broken ankle. He asserts claims against the defendants under the Eighth and Fourteenth Amendments. Plaintiff seeks monetary damages and injunctive relief.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter

1

out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations: At 7:05 a.m. on July 12, 2018, while working in the kitchen at Lawrence, Plaintiff fell on a wet and slippery floor in the bathroom, breaking his left ankle. (Doc. 1, p. 9). He had previously reported the wet and slippery condition of the bathroom to Dietary Supervisors Kohn and Gertch, but the conditions were ignored. He reported the injury to Dietary Security Supervisor Sanders and Gertch, but they refused to send him to the healthcare unit. Gertch informed Plaintiff that it was probably just twisted. Instead of getting medical attention, Plaintiff was sent back to his housing unit for a scheduled appointment to have his picture taken. (*Id*. at pp. 9-10). In his housing unit, he reported the injury to C/O Rue, who provided him with ice and told him to take ibuprofen, but informed Plaintiff that the dietary staff would have to send him to the healthcare unit, because that was where he injured his ankle. (*Id*. at pp. 9-10).

Plaintiff returned to work and again asked Sanders and Gertch to go to the healthcare unit but they refused, despite Plaintiff showing them his discolored and swollen ankle. (Doc. 1, pp. 11-12). Plaintiff continued to work in dietary on his injured ankle for several hours until Lt. McCarthy came to dietary. (*Id*. at pp. 12-13). Plaintiff showed McCarthy his ankle, which was swollen, and McCarthy called the healthcare unit. Plaintiff went to the healthcare unit on his own and waited fifteen minutes for Nurse Ward to take his vitals. (*Id*. at p. 13). Nurse Ward examined him, and he was then seen by Dr. Ahmed who ordered x-rays. Dr. Ahmed informed Plaintiff that his ankle was broken in three places and sent him to an outside hospital for care. (*Id*.).

Plaintiff was transported to Richland Memorial Hospital in Olney, Illinois, by C/O's Sloan and Hawes who shackled his legs, despite Plaintiff informing them that his ankle was broken in three places and he could not walk. (Doc. 1, p. 13). They made him walk on his ankle despite the injury. At the hospital, Plaintiff was informed that his ankle was further damaged from the delay he experienced in being transported to the hospital and from walking on the ankle all morning. (*Id*. at p. 14). Plaintiff required surgical repair of his ankle including eight screws, two pins, and two plates to hold his ankle together. (*Id*. at pp. 14-15).

Plaintiff was released from the hospital on July 14, 2018. He was provided with crutches and instructions not to put weight on his foot. Upon his arrival at the prison, Nurse Ward had him walk to his housing unit. (Doc. 1, p. 15). When he almost fell, she brought him a wheelchair. Plaintiff describes the wheelchair as a "reject"—it had a missing sideboard and footrest, and the seat was torn. Plaintiff saw Ahmed upon his return and was reminded not to bear any weight on the foot. (*Id.* at p. 16). Plaintiff complained of pain and wrote requests to the healthcare unit on several occasions. Dr. Ahmed saw Plaintiff on August 4, 2018, when Plaintiff's cast started splitting. Despite the cast splitting and Dr. Ahmed stating that the ankle might not heal properly because of the issues with the cast, Dr. Ahmed did not do anything further with Plaintiff's ankle. (*Id*.).

The cast was eventually removed Plaintiff's leg, and he was instructed to walk on his left foot. Although he was prescribed Trammadol/Ultram for the pain by the surgeon, it was ineffective. (Doc. 1, p. 16). He continued to suffer from pain in the ankle and reported the pain to N.P. Stover on September 12, 2018. N.P. Stover increased his ibuprofen dosage. (*Id*. at p. 17). He continued to suffer from pain. During a visit with the surgeon in October, the surgeon deferred to Dr. Ahmed on Plaintiff's pain management and rehabilitation. Plaintiff continued to complain of

pain and was seen by Nurse Welty on November 8, 2018, who told him he would have to wait for his follow-up appointment on November 21, 2018. (*Id*. at p. 18). Plaintiff saw Dr. Shah on November 21, 2018, but he just told him not to use ice for swelling. Plaintiff continued to submit nurse call requests for pain and was seen by N.P. Stover on February 25, 2019, who recommended that he have a follow-up with the surgeon. (*Id*. at pp. 18-19). Plaintiff continues to suffer from pain and swelling, but his nurse sick call passes are cancelled or rescheduled. Plaintiff alleges that his treatment at Lawrence is a result of the racial animus that the staff has towards African American inmates.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following five counts:

> **Count 1:** **Dietary Supervisor Kohn, Dietary Supervisor Gertch, and Dietary Supervisor Densmore were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement when they ignored complaints of wet and slippery floors.**
>
> **Count 2:** **C/O Sanders, Dietary Supervisor Gertch, C/O Rue, Lt. McCarthy, Nurse Ward, and Dr. Ahmed were deliberately indifferent under the Eighth Amendment to Plaintiff's broken ankle.**
>
> **Count 3:** **C/O Sloan and C/O Hawes were deliberately indifferent under the Eighth Amendment when they made Plaintiff walk, shackled, on his injured ankle.**
>
> **Count 4:** **Dr. Ahmed, Dr. Shah, Nurse Welty, and N.P. Stover were deliberately indifferent under the Eighth Amendment in treating Plaintiff's pain after surgery.**
>
> **Count 5:** **Defendants' treatment of Plaintiff's ankle violated his equal protection rights under the Fourteenth Amendment.**

4

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

## Count 1

Plaintiff fails to state a claim as to the wet floors in the bathroom. Wet floors do not present a substantial risk of serious harm. *Bell v. Ward*, 88 F. App'x 125, 127 (7th Cir. 2004). "Although wet floors do present a possibility that inmates might slip, [the] allegations do not suggest a *substantial* risk of serious harm that reflects the deliberate indifference required to impose liability under the Eighth Amendment. *Id*. (citing *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir.1993) ("slippery prison floors ... do not state even an arguable claim for cruel and unusual punishment."); *see also Snipes v. DeTella,* 95 F.3d 586, 592 (7th Cir.1996) ("an inch or two" of accumulated water in the shower not "an excessive risk to inmate health or safety")). Further, the failure to clean up the water on the floors amounts to, at most, negligence and does not state a claim for deliberate indifference. *Bell*, 88 F. App'x at 127. Count 1 against Kohn, Gertch, and Densmore[2] is **DISMISSED without prejudice**.

## Count 2

Plaintiff states a claim for deliberate indifference against C/O Sanders, Supervisor Gertch, and C/O Rue. Although Plaintiff asked Defendants on several occasions to go to the healthcare unit, they each refused his request. This caused Plaintiff to walk on his broken ankle for several

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

[2] Plaintiff only lists Densmore in the caption of his Complaint and under his list of Defendants where he indicates Densmore was the top supervisor in dietary. He does not include any specific allegations against Densmore in the statement of claim, although he does state he informed all supervisors of the wet floors.

hours before he was sent to the healthcare unit for treatment. At the hospital, the surgeon informed him that his injury had been exacerbated by the delay in treatment and walking on the foot all morning. These allegations state a claim for deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment); *Smith v. Knox*, 666 F.3d 1037, 1039-40 (7th Cir. 2012) (delay of a few days can amount to deliberate indifference).

The Court finds, however, that Plaintiff fails to state a claim against Lt. McCarthy, Nurse Ward, and Dr. Ahmed. As to Lt. McCarthy, he called the healthcare unit as soon as Plaintiff showed him his injured ankle. (Doc. 1, p. 13). Dr. Ahmed also immediately examined Plaintiff and ordered x-rays. Once he determined the ankle was broken, Dr. Ahmed sent Plaintiff to an outside hospital. (*Id*.). There is no indication that these individuals acted with deliberate indifference or delayed treatment of his injured ankle in any way. Thus, Count 2 is **DISMISSED without prejudice** against Lt. McCarthy and Dr. Ahmed for failure to state a claim.

As to Nurse Ward, Plaintiff alleges that he waited in the healthcare unit 15 minutes before she examined Plaintiff. This short delay of minutes does not amount to deliberate indifference. Nurse Ward examined Plaintiff and immediately put him in to see Dr. Ahmed. He also alleges that when he returned to Lawrence, she let him walk to the housing unit on his crutches and then brought him a wheelchair when he could not walk the entire distance. Although Plaintiff was not happy with the quality of wheelchair that Nurse Ward provided him, she did provide him a wheelchair when he could not walk the distance to his housing unit. These actions do not amount to deliberate indifference. Thus, Nurse Ward is also **DISMISSED without prejudice** from Count 2.

**Count 3**

Plaintiff states a claim for deliberate indifference against C/O Sloan and C/O Hawes for forcing Plaintiff to walk on his broken ankle, while the ankle was shackled. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

**Count 4**

Plaintiff also states a claim against Dr. Ahmed, Dr. Shah, and Nurse Welty for failing to treat his pain after surgery. Plaintiff complained of pain and put in several sick call requests regarding his pain, but when he saw Dr. Ahmed and Dr. Shah they did not nothing additional to treat his pain. Nurse Welty told him he would have to wait thirteen days for his normally scheduled follow-up, even though he complained of pain in nurse sick call requests on several occasions (Doc. 1, p. 18). This states a claim for deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement); *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (deliberate indifference when doctor continues with treatment knowing it to be ineffective).

But Plaintiff fails to state a claim against N.P. Stover for deliberate indifference to his pain. Plaintiff's Complaint indicates that Stover increased his ibuprofen when he complained of pain (Doc. 1, p. 17) and also made a recommendation that he return to the surgeon when he continued to complain of pain (*Id*. at p. 19). These allegations do not indicate deliberate indifference. To the contrary, the allegations indicate that Stover listened to Plaintiff's complaints of pain and provided him with additional care. Thus, N.P. Stover is **DISMISSED without prejudice** from Count 4 for failure to state a claim.

## Count 5

Plaintiff's Complaint broadly states that the delay in his treatment by Defendants was motivated by racial animus and racial bias. He does not offer any additional facts to support this belief. The Fourteenth Amendment guarantees the equal protection of the laws, prohibiting disparate treatment based on race. To show a violation of equal protection based on race, "plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Ill. State Police,* 251 F.3d 612, 635–36 (7th Cir.2001). A plaintiff must establish that a state actor has purposely treated him differently than persons of a different race. *See DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir.2000). Here, Plaintiff merely invokes the words "racial animus" and states his belief that delays in his treatment were due to "racial bias." (Doc. 1, p. 14). Without something more, Plaintiff's claim falls short of alleging that Defendants violated his rights under the Fourteenth Amendment. Thus, Count 5 is **DISMISSED without prejudice**.

## **Pending Motions**

In his Motion for Counsel (Doc. 3), Plaintiff indicates that he has sent letters to several attorneys but they have declined to take his case. Plaintiff claims that he will need help with this case because he has no legal experience. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[3] Therefore, Plaintiff's Motion for Counsel

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

(Doc. 3) is **DENIED** without prejudice. Plaintiff may renew his request for the recruitment of counsel at a later date.

## Disposition

For the reasons stated above, Count 1 is **DISMISSED without prejudice**. Count 2 shall proceed against C/O Sanders, Dietary Supervisor Gertch, and C/O Rue, but is **DISMISSED without prejudice** as to Lt. McCarthy, Nurse Ward, and Dr. Ahmed. Count 3 shall proceed against C/O Sloan and C/O Hawes. Count 4 shall proceed against Dr. Ahmed, Dr. Shah, and Nurse Welty, but is **DISMISSED without prejudice** as to N.P. Stover. Count 5 is also **DISMISSED without prejudice**.

The Clerk is **DIRECTED** to terminate Dietary Supervisor Kohn, Dietary Supervisor Densmore, Lt. McCarthy, Nurse Ward, and N.P. Stover from the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

The Clerk of Court shall prepare for Defendants Gertch, Sanders, Rue, Sloan, Hawes, Dr. Ahmed, Dr. Shah, and Nurse Welty: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known,

defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: 6/14/2019

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**