UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TRACEY VICKERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:19-cv-398-GCS |
| | ) | |
| ROBERT GERTCH, | ) | |
| SHAWN SANDERS, | ) | |
| BRADLEY RUE, | ) | |
| JAMES SLOAN, | ) | |
| DAWNA HAWES, | ) | |
| FAIYAZ AHMED, | ) | |
| VIPIN SHAH, and | ) | |
| TAMMY WELTY | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Tracey Vickers, an inmate in the custody of the Illinois Department of Corrections, alleges that Defendants were deliberately indifferent to his pain and medical needs after he broke his left ankle when he fell on a wet, slippery floor while he was working in the kitchen at Lawrence Correctional Center on July 12, 2018. As to Defendants Faiyaz Ahmed, Vipin Shah, and Tammy Welty, Vickers claims that they failed to treat his pain appropriately after he had surgery on his ankle (Count 4). Now before the Court are motions for summary judgment on the issue of exhaustion filed by Defendants Faiyaz Ahmed, Vipin Shah, and Tammy Welty. The Court held a hearing on the motions on February 19, 2020. For the reasons delineated below, the Court grants Defendants' motions for summary judgment.

## FACTUAL BACKGROUND

At all times relevant to his complaint, Vickers was incarcerated at Lawrence Correctional Center ("Lawrence"). Defendant Faiyaz Ahmed was a doctor who treated Vickers's ankle injury at Lawrence. Defendant Tammy Welty was a nurse employed by Wexford Health Sources, Inc. ("Wexford") and worked at Lawrence. Defendant Vipin Shah was a doctor employed by Wexford who worked at Lawrence.

Vickers alleges that all three defendants were deliberately indifferent to his pain and medical needs after he had surgery to repair his broken ankle on July 13, 2018. Vickers attached a grievance to his complaint (#10-18-122) dated July 23, 2018. The grievance explained how he broke his ankle and described his interactions with correctional officers after his injury. He describes finally being sent to the healthcare unit after several officers brushed off his pain. At the healthcare unit, Dr. Ahmed took x-rays of his ankle, determined there was a fracture, and sent Vickers to the hospital for treatment. Neither Welty nor Dr. Shah are mentioned in the grievance, and the grievance requests that "staff take reported injuries more serious[ly]." He did not request additional or different medical care in the grievance, nor did he complain about any care received from Dr. Ahmed or the healthcare unit. (Doc. 1, p. 22-23).

A counselor received the grievance on July 30, 2018, and responded to it on October 19, 2018. A grievance officer reviewed it on October 23, 2018, and recommended that the grievance be denied. The Chief Administrative Officer ("CAO") concurred in the decision on October 24, 2018. Vickers appealed to the Administrative Review Board

("ARB"). The ARB received his appeal on November 5, 2018, and his appeal was denied on the merits on January 8, 2019. (Doc. 1, p. 22-25).

Records subpoenaed from the ARB show two additional grievances received from Vickers. The first, dated February 1, 2018, pre-dates Vickers' ankle injury. (Doc. 41-1, p. 11-14). The second is a grievance dated September 18, 2018. In this grievance, Vickers explains that he slipped and fell "at work" and broke his ankle. While he was still under the care of his doctors, he was changed from a dietary worker to un-assigned, and he complains that he was removed from his job and was not being paid. He does not complain about his medical care in the grievance, and he asks that he be given back pay and that he be reinstated to his position as a dietary worker. On January 8, 2019, the ARB denied an appeal of the September 18, 2018 grievance on the merits. (Doc. 41-1, p. 3-6).

In his response to Defendants' motions, Vickers includes three supplemental grievances that he alleges he filed after having appointments with Defendants Ahmed, Welty, and Shah. He claims that he made copies of these supplements and then deposited them in the box for filing grievances. None of the three supplements were returned to him, and Vickers "presumed that they were made a part of" the July 23, 2018 grievance. The first grievance was dated August 13, 2018, and Vickers wrote that it was "additional and follow-up to 7-23-18 grievance." (Doc. 55, p. 8). In the grievance, he complains about a split in his cast and that he saw Dr. Ahmed on or about August 6, 2018. Dr. Ahmed allegedly told Vickers that his ankle may not heal properly due to the split, but Vickers claims that Dr. Ahmed "did nothing to remedy the situation." (Doc. 55, p. 18).

Vickers also attached a grievance dated November 9, 2018, in which he complains about pain and swelling related to his ankle injury. He further alleges that Welty blew him off when he tried to get help during sick call. This grievance is also marked "additional and follow-up information to 7-23-18 grievance." (Doc. 55, p. 9). Finally, Vickers includes a grievance dated November 23, 2018, in which he complains that Dr. Shah did not look at his ankle during their follow-up appointment and that he got angry and told Vickers to leave when Vickers mentioned his "swollen, hurting left ankle." (Doc. 55, p. 10).

The Court held a hearing on February 19, 2019. At the hearing, Vickers testified that he assumed his supplemental grievances, each of which names one of the moving Defendants, were treated as a part of his July 23, 2018 grievance and that they went to the ARB, which is why he did not receive a response from officials at Lawrence to any of these three grievances. He further testified that Lawrence loses grievances all the time and that his counselor told him that he was six months behind in responding to grievances. Vickers denied that his counselor responded to the July 23 grievance on July 30, 2018, claiming that it was backdated to make it appear that was the date of the response. Vickers claimed that he had the three supplements in his possession when he filed his complaint, but he offered no explanation as to why he attached his July 23, 2018 grievance to his complaint, but not the three supplemental grievances related to Defendants Ahmed, Shah, and Welty.

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the Illinois Department of Corrections, Vickers was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims

properly. *See* 20 ILL. ADMIN. CODE §504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE §504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within

30 days after the date of the decision." 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE §504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE §504.850(f).

ANALYSIS

Defendants' motions turn on the credibility of Vickers's claims regarding the alleged filing of three supplemental grievances. None of the grievances in the ARB's files exhaust Vickers's claims against Dr. Ahmed, Dr. Shah, or Nurse Welty. Only the three supplemental grievances raise any complaints about his medical treatment. Based on the record and Vickers's testimony, the undersigned cannot find that these three supplements were properly filed or fully exhausted prior to Vickers filing suit in April 2019.

Vickers first claimed that he assumed the three supplements were sent to the ARB as part of his appeal of his July 23, 2018 grievance, but two of the three supplements were dated after the ARB received Vickers' appeal, undermining his credibility on this claim. Vickers also offered no reasonable explanation for why he attached his July 23, 2018 grievance to his complaint, but not the three alleged supplements that addressed his medical care, each of which named one of the moving defendants specifically. His claims about his counselor being far behind and losing grievances are unsupported by the record and too vague to lend credibility to his position, and, taken as a whole, the Court cannot find that the purported supplements were part of the July 23, 2018 grievance.

Similarly, the Court cannot find that the supplements were separate grievances that Vickers was thwarted from pursuing because there is no independent support for such a claim, and the Court finds Vickers' testimony uncreditable. The record demonstrates that Vickers understood the grievance process and that he availed himself of it three times. Only the three supplemental grievances, which Vickers both alleges were

part of the exhausted July 23, 2018 grievance and were standalone grievances, address any complaints with medical care. Two supplements were dated after Vickers appealed the July 23rd grievance, so they cannot be part of that appeal. The third does not address Defendants Shah or Welty, nor does it address any issues with post-surgery pain.

To the extent that the supplements were standalone grievances, they were not exhausted, and the Court does not find adequate evidentiary support to demonstrate that it was impossible for Vickers to exhaust his administrative remedies as to his claims in Count 4. As such, the Court finds that Vickers failed to exhaust his administrative remedies as to Defendants Ahmed, Shah, and Welty prior to filing suit in April 2019.

## CONCLUSION

For the above-stated reasons, Defendants' motions for summary judgment (Docs. 40, 43, 46) are **GRANTED**. Plaintiff Tracey Vickers's claims against Defendants Faiyaz Ahmed, Tammy Welty, and Vipin Shah are dismissed without prejudice due to his failure to exhaust administrative remedies prior to filing suit. Vickers's claims in Count 2 against Defendants Sanders, Gertch, and Rue remain pending, as do his claims in Count 3 against Defendants Sloan and Hawes.

**IT IS SO ORDERED.**

Dated: February 25, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.02.25 15:37:50 -06'00'

_____
GILBERT C. SISON
United States Magistrate Judge